IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br>for the use and benefit of<br>JRC MECHANICAL, LLC<br>    a Virginia limited liability company,<br><br>                            Plaintiff,<br><br>v.<br><br>WOLVERINE FIRE PROTECTION CO.<br>A Michigan corporation,<br>    **Serve: Corporation Service Company**<br>          **100 Shockoe Slip**<br>          **Second Floor**<br>          **Richmond, VA  23219**<br><br>and<br><br>QBE INSURANCE CORPORATION,<br>A Pennsylvania corporation,<br>    **Serve: CT Corporation System**<br>          **4701 Cox Road**<br>          **Suite 285**<br>          **Glen Allen, VA  23060**<br><br>                            Defendants. | Civil Action No. |

**COMPLAINT**

Plaintiff, The United States of America, for the use and benefit of, JRC Mechanical, LLC, files this Complaint against Defendants, Wolverine Fire Protection Company and QBE Insurance Corporation (together, the "Defendants"), and in support of its claims alleges as follows:

**Parties and Jurisdiction**

1. Plaintiff, JRC Mechanical, LLC ("JRC"), is a Virginia limited liability company with its principal office in the City of Chesapeake, Virginia and registered agent in the City of Norfolk, Virginia. Its member corporations, limited liability companies, and individual owners are all citizens of the Commonwealth of Virginia, State of Florida, and/or North Carolina.

2. Defendant Wolverine Fire Protection Company ("Wolverine"), is a foreign corporation chartered under the laws of the State of Michigan engaged in the business of design and construction of fire protection systems with a principal office at 8067 N. Dort Highway, Mt. Morris, Michigan 48458, and a registered agent in Richmond, Virginia.

3. QBE Insurance Corporation ("QBE" or "Surety") is a foreign corporation chartered under the laws of the State of Pennsylvania with a principal place of business located at 1 QBE Way, Sun Prairie, Wisconsin 53596, and a registered agent in Glen Allen, Virginia.

4. This case involves the Defendants' nonpayment of sums due to JRC for labor, materials, and work supplied to a DLA DDRV warehouse fire protection upgrade project in Richmond, Virginia.

5. Jurisdiction over this matter is vested in this Court pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendants. Jurisdiction over this matter is also vested in this Court pursuant to 28 U.S.C. § 1331 as the basis for the claims asserted herein arises under the Miller Act, 40 U.S.C. §§ 3131, *et seq*. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b)(2) as the acts or omissions giving rise to the claims herein occurred in the Eastern District of Virginia.

## Background

6. Wolverine serves as the prime contractor on a construction project involving the installation of fire protection systems and related HVAC upgrades in ten (10) DLA DDRV warehouses in the City of Richmond, Virginia, having entered into prime contract number W912HP-16-D-003 with the United States Army Corps of Engineers (the "Government") on February 8, 2019 (the "Project" and the "Prime Contract").

7. As of March 11, 2019, Wolverine, as principal, and QBE, as surety, duly executed and furnished Payment Bond No. BND. 26711048 (the "Payment Bond") in the amount of $13,963,391.00 for the benefit of Wolverine and all parties providing labor and materials to the Project and as required by 40 U.S.C. §§ 3131-3134 (the "Miller Act").  A copy of the Payment Bond is attached hereto as **Exhibit A**.

8. The total obligation of the Bond is guaranteed, jointly and severally, by Wolverine and QBE.

9. By subcontract dated May 14, 2019, JRC entered into subcontract number 705472 with Wolverine (the "Subcontract") for the procurement and installation of HVAC systems for the Project, including the procurement of makeup air units and related equipment (the "MAU's").  A true and correct copy of the Subcontract is attached as **Exhibit B** and incorporated herein by reference.

10. By written correspondence in March and April, 2019, Wolverine's senior project manager directed JRC to procure the MAU's for three of the Project's ten warehouses so that Wolverine could ensure timely progress on the Project.

11. Consistent with Wolverine's direction and its obligations under the Subcontract, JRC therefore procured and purchased twelve (12) MAU's that Wolverine requested under the

Subcontract (the "Equipment"), for which it incurred direct costs of $441,101.70, along with storage, handling, and transportation costs in a total amount of $99,598.18, payment and performance bond costs of $24,716.00, plus an additional amount of $97,325.98 related to profit and overhead, in the total amount of $662,741.86 (the "Equipment Costs").

12. JRC obtained the Equipment between June and September 16, 2019, and submitted invoices for payment of the Equipment and related costs to Wolverine.

13. Notwithstanding the provisions in the Subcontract entitling JRC to payment of the Equipment Costs, Wolverine failed and refused to pay JRC any of the foregoing amounts. As a result, by correspondence dated August 18, 2020, JRC, by counsel, demanded that Wolverine remit payment for the Equipment Costs no later than August 25, 2020 (the "Demand"). A true and correct copy of the Demand is attached hereto as **Exhibit C**.

14. Wolverine did not respond to the Demand.

15. Wolverine wrongfully has withheld amounts owed to JRC since the Equipment's delivery in September 2019. In making these withholdings, Wolverine has failed to comply with the requirements of the Subcontract and the Miller Act.

16. Despite repeated demands, Wolverine failed and continues to fail to pay the Equipment Costs.

17. QBE is a compensated, corporate surety charged with securing prompt payment of Wolverine's payment obligations to persons providing labor and materials to the Project.

18. On or around August 31, 2020, JRC provided timely notice to the Surety of Wolverine's lack of payment and submitted its claim for payment of the Equipment Costs under the Payment Bond (the "Notice of Claim"). A copy of the Notice of Claim sent to the Surety is attached hereto as **Exhibit D.**

19. By correspondence dated September 3, 2020, the Surety acknowledged JRC's claim and requested additional documentation regarding the claim.

20. By correspondence dated September 10, 2020, JRC provided the Surety the requested documentation.

21. It has been more than 90 days and less than one year since JRC last performed labor and/or furnished materials to the Project.

22. All conditions precedent to JRC bringing this action have been performed, satisfied, excused, or waived.

## Count I
### (Breach of Contract Against Wolverine)

23. JRC restates, re-alleges, and re-pleads the allegations in the foregoing paragraphs as if fully set forth in this Count I.

24. JRC and Wolverine entered into an enforceable contract whereby JRC agreed to provide labor and materials for the Project in return for payment.

25. Wolverine's failure and refusal to pay JRC constitutes a material breach of contract.

26. Wolverine's material breach of contract has damaged JRC in the amount of the Equipment Costs.

27. JRC is entitled to its legal and attorney's fees incurred in this litigation pursuant to Section 7 of the Subcontract.

28. All conditions precedent to Wolverine's obligation to pay JRC have been satisfied, fulfilled, or excused.

WHEREFORE, as to Count I, JRC respectfully requests that the Court enter an Order granting judgment against Wolverine and in favor of JRC in the amount of $662,741.86, plus pre-

and post-judgment interest, costs incurred herein, its attorney's fees incurred, and such other and further relief as the Court deems appropriate.

## Count II
## (Breach of Payment Bond)

29. JRC re-states, re-alleges, and re-pleads the allegations in the foregoing paragraphs as if fully set forth in this Count II.

30. JRC fully and properly performed all of its obligations for the Project.

31. JRC is a proper claimant under the Payment Bond and is in a class of those entitled to a right of action under the Payment Bond.

32. JRC provided notice to the Surety of its claim within the time required by statute and the Payment Bond. Despite receiving timely notice, the Surety failed and/or refused to pay JRC's claim.

33. QBE's failure to pay JRC's claim is a breach of the Payment Bond and the Miller Act, 40 U.S.C. §§ 3131, *et seq*.

34. All conditions precedent, if any, have occurred, have been waived or have been otherwise released.

35. Under the terms of the Payment Bond, the Surety is liable to JRC for the full amount of the Equipment Costs totaling not less than $662,741.86.

36. Because of the Surety's actions, JRC was required to bring this action seeking to enforce the Surety's obligations under the Payment Bond.

WHEREFORE, as to Count II, JRC respectfully requests that the Court enter an Order granting judgment against Wolverine and the Surety, jointly and severally, and in favor of JRC in the amount of $662,741.86, its pre- and post-judgment interest, its costs incurred herein, attorney's fees incurred, and such other and further relief as the Court deems appropriate.

## ALTERNATIVE COUNT III
### (Unjust Enrichment / Quantum Meruit Against Wolverine)

37.     JRC restates, re-alleges, and re-pleads the allegations in the foregoing paragraphs 1-22 as if fully set forth in this Counts I and III.

38.     JRC asserts this count in the alternative to Count I and Count II.

39.     Wolverine requested that JRC provide it with materials and labor needed to for the construction of the Project.  Although JRC furnished materials for the Project, Wolverine has failed and refused to pay for the value of the materials provided by JRC.

40.     Wolverine received the benefit of the materials procured by JRC, which benefit is valued at not less than $662,741.86.  To date, Wolverine has paid no consideration for this benefit.

41.     Under the circumstances, Wolverine knew or reasonably should have known that JRC expected to be paid for the materials that it provided.

42.     Wolverine's acceptance of the benefit of the materials provided by JRC under the circumstances make it inequitable for Wolverine to retain this benefit without payment of its value.

43.     Wolverine has knowingly and has been unjustly enriched by JRC's procurement of the Equipment, to JRC's detriment.

44.     JRC is entitled to payment from Wolverine for the value of the materials provided to the Project, in an amount to be determined at trial, but not less than $662,741.86.

WHEREFORE, as to Count III, JRC respectfully requests that the Court enter an Order granting judgment against Wolverine and in favor of JRC in the amount of $662,741.86, plus pre- and post-judgment interest, its costs incurred herein, and such other and further relief as the Court deems appropriate.

JRC MECHANICAL, LLC

By: /s/ Nathaniel L. Story
Nathaniel L. Story (VSB No. 77364)
Alexander P. M. Boyd (VSB No. 90578)
HIRSCHLER FLEISCHER
A PROFESSIONAL CORPORATION
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia  23218-0500
Telephone: 804.771.9500
Facsimile: 804.644.0957
E-mail: nstory@hirschlerlaw.com
 aboyd@hirschlerlaw.com

*Counsel for JRC Mechanical, LLC*

12676973.2  041520.00006